UNITED STATES DISTRICT COURT
                              FOR THE
                    WESTERN DISTRICT OF NEW YORK

LIBERTY MUTUAL INSURANCE      )
COMPANY and LIBERTY MUTUAL    )
GROUP INC.,                   )
                              )
        Plaintiffs,            )
                              )
        v.                     )    Case No. 17-cv-1152
                              )
MICHAEL GUERESCHI, SHANON     )
LEBEL, and LFA GROUP, LLC,    )
                              )
        Defendants.            )

## OPINION AND ORDER

Plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Group Inc. (collectively "Liberty Mutual") bring this action for damages and injunctive relief against Liberty Mutual's former sales representative Michael Guereschi, his business associate Shanon Lebel, and LFA Group, LLC. The Complaint alleges an unlawful conspiracy to steal Liberty Mutual clients/policyholders, and brings causes of action for breach of contract, tortious interference, unjust enrichment and civil conspiracy. Defendants have moved to dismiss for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion to dismiss is **denied**.

## Factual Background

The following facts are alleged in the Complaint. Michael Guereschi began employment with Liberty Mutual as a sales representative in 2003. He was assigned to work out of several offices, the last of which was in Wheatfield, New York. As

Guereschi had no experience in the insurance industry prior to 2003, Liberty Mutual trained him and helped him to prepare for the examinations required for his insurance licenses.  Liberty Mutual also provided ongoing professional and operational training, as well as office facilities, professional support services, and access to the company's insurance expertise.

Liberty Mutual claims that Guereschi derived substantial benefit from the company's marketing and advertising, as well as policyholder referrals.  Specifically, the company reassigned established customers to Guereschi and provided him leads on other individuals.  Guereschi also benefitted from the company's affinity group relationships with other companies and associations.  Those relationships allowed Liberty Mutual to market and sell its insurance products to those groups and their members/clients, which included college alumni associations, car manufacturers, and local car dealerships.

In the course of his work, Guereschi was required to generate information from existing or prospective policyholders about their insurance needs.  Liberty Mutual considers that information highly confidential and valuable.  The Complaint alleges that Guereschi agreed to ensure the confidentiality of such information in the event of his termination.  Guereschi also had access to confidential and proprietary information used to determine coverage scope, exclusions and premiums, as well as

information about product types, exposure levels, and policyholder contact information. Liberty Mutual further provided Guereschi with access to proprietary sales strategies, quoting tools, and prospecting tools.

In order to protect this confidential information, Liberty Mutual required its personnel to execute agreements with confidentiality provisions, return-of-information clauses, and restrictive covenants designed to protect against improper disclosure or use. The company also employed password protections on its computers, pass key access for office printers, and locked its offices during non-business hours.

On December 14, 2014, Guereschi executed the 2015 Non-Solicitation, Non-Disparagement and Confidentiality Agreement. The following year, he signed the 2016 version of that agreement (the "Agreement"). The Agreement provided, in part:

> All equipment, material, records, supplies, policies, manuals, rate books, forms, files, notes, letters, lists, expirations, underwriting criteria, pricing and profit information, financial information, promotional ideas, cost and pricing, processes, lists of actual or potential policyholders, and documents or information reflecting the names, addresses, phone numbers and email addresses of existing or potential policyholders, and any other documentation and/or information, in any form or medium, provided to me by the Company or developed or obtained by me in the course of performing my duties as an employee of the Company, pertaining to the business of the Company of pertaining to any of its policyholders or prospective policyholders ("Property"), shall be and remain the sole and exclusive property of the Company. Upon the voluntary or involuntary termination of my employment with the Company, I agree to immediately deliver to the Company

>     or its designee the original and any copies, notes,
>     recordings, transcriptions or any other reproductions
>     of such Property, resident in whatever media.  I also
>     agree not to divulge to, share with, or permit access
>     by any person, company or organization not currently
>     employed by or affiliated with the Company to such
>     Property both during and after my tenure was an
>     employee of the Company.

ECF No. 1-1.

Guereschi also agreed to certain limited non-competition provisions, effective for two years from his voluntary or involuntary termination from the company.  Those included agreements to refrain from selling, attempting to sell, or soliciting the purchase of products or services of the kind offered by Liberty Mutual, and an agreement not to communicate with any policyholder or prospective policyholder about reducing or cancelling their Liberty Mutual insurance.  These latter agreements applied to any clients or persons to whom Guereschi had provided insurance services or quotes within the previous 12 months.

A non-disparagement provision prevented Guereschi from speaking or acting "in any manner that is intended to, or does in fact, damage the goodwill of the business of the Company or the business or personal reputation of any of its directors, officers, agents or employees . . . ." *Id.* Agreement Section 2(f) required Guereschi notify any future employer of the Agreement, and to inform Liberty Mutual of the identity of such employer.

In November 2016, Liberty Mutual terminated Guereschi's employment for cause. The Complaint alleges that since leaving the company, he has violated the Agreement. After his termination, Guereschi was appointed as an agent for Allstate, a direct competitor with Liberty Mutual. Guereschi allegedly failed to provide Liberty Mutual notice of his new affiliation with Allstate, as required in Agreement Section 2(f).

On March 30, 2017, Guereschi posted on social media: "I am proud to announce I am up and running with Allstate! Linda Terrana has joined our staff too!! Call us and say hi! 716-256-1555." In response to a question about his office location, Guereschi posted, "3376 Niagara Falls Blvd NY . . . STOP IN AND SAY HI!!" Defendant LFA Group, LLC is Guereschi's new insurance agency.

Liberty Mutual claims that after Guereschi joined Allstate, several Liberty Mutual policyholders cancelled their insurance and bought replacement policies from Guereschi's office. The company asserts, upon information and belief, that Guereschi induced or assisted those policyholders in cancelling their Liberty Mutual policies. Liberty Mutual notes that certain cancellation forms listed the producer as Shanon Lebel, Allstate Insurance Company, 3376 Niagara Falls Boulevard—the same agency and location posted by Guereschi as the site of his new office. The cancellations also allegedly contained Guereschi's

5

handwriting.  Liberty Mutual further alleges, upon information and belief, that Lebel and defendant LFA Group had knowledge of the restrictions in the Agreement.

On June 21, 2017, Liberty Mutual's attorney sent letters to Guereschi and Lebel demanding certain information, including cancellation forms, and requiring future compliance with the Agreement.  Liberty Mutual sent a second letter on August 1, 2017.  Guereschi's counsel responded, but did not provide the requested information.  Letters sent to Guereschi and Lebel on August 16, 2017 received no response.

The Complaint asserts five causes of action: (1) breach of contract, brought against Guereschi for breaches of the Agreement; (2) tortious interference with contractual relationships and/or business relations with actual or potential Liberty Mutual policyholders, brought against all defendants; (3) tortious interference with Guereschi's contractual relationship with Liberty Mutual, brought against Lebel and LFA Group; (4) unjust enrichment, brought against all defendants; and (5) civil conspiracy, also brought against all defendants.  For relief, the Complaint seeks damages, attorney's fees, and various forms of injunctive relief, including an order requiring all defendants to essentially abide by the terms of the Agreement.

Defendants have filed a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure

12(b)(6).  Defendants' primary argument is that the Agreement is unenforceable because it is unreasonable.  Defendants also claim that Liberty Mutual has failed to allege facts to support plausible claims of tortious interference, unjust enrichment and conspiracy.  The motion to dismiss is opposed.

## Discussion

### I. Motion to Dismiss Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff.  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).  "Fact-specific question[s] cannot be resolved on the pleadings."  *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001).

### II. Breach of Contract

In moving to dismiss Liberty Mutual's claim for breach of contract, defendants characterize the Agreement as a non-compete agreement and argue that it is unenforceable.  Liberty Mutual contends in opposition that other portions of the Agreement, such as Section 2(f) requiring notification to Liberty Mutual of a new

7

employer, are not addressed.  Liberty Mutual further argues that a non-compete agreement is subject to factual determinations that are not ripe for consideration on a motion to dismiss.

Defendants submit that the Agreement is not enforceable because it is unreasonable.  ECF No. 16-3 at 8 (acknowledging that "New York courts have long applied a general standard of reasonableness for judging the validity of such agreements"). Under New York law, post-employment restrictive covenants are enforceable if the restraint: (1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public.  *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388–89 (1999).  A violation of any prong renders the covenant invalid.  *Id.* at 389.  New York courts have further determined that non-competition agreements encompass legitimate employer interests when they are designed "(1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique."  *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) (citing *Purchasing Assocs. Inc. v. Weitz*, 13 N.Y.2d 267, 272–73 (1963)).

In this case, the Complaint sets forth a host of information

that Liberty Mutual considers to be confidential.  That information includes lists of clients, marketing techniques, and insurance-specific tools.  The Complaint also alleges that Guereschi contacted clients with whom he had worked within the previous 12 months, thereby violating not only the confidentiality provisions of the Agreement but also the non-solicitation provisions.

Whether Liberty Mutual has properly characterized its information as confidential has yet to be established.  *Cf*. *Estee Lauder Companies Inc. v. Batra*, 430 F. Supp. 2d 158, 180 (S.D.N.Y. 2006) ("reasonableness will be judged by the specific facts underlying the agreement and the nature of the employer's confidential information.").  Undue hardship to the employee and public injury may also be explored.  *See BDO Seidman*, 93 N.Y.2d at 389.  New York cases also consider whether the contract's scope and duration are reasonable under the circumstances. *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 312 (S.D.N.Y. 1999) ("In New York, non-compete covenants will be enforced only if reasonably limited in scope and duration . . . .").  Such fact-specific determinations are not properly considered at this early stage in the case.  *See, e.g., Installed Bldg. Prod., LLC, v. Cottrell*, No. 13-CV-1112-ASC, 2014 WL 3729369, at \*7 (W.D.N.Y. July 25, 2014) ("the Court cannot hold at this procedural juncture that the non-compete at issue is unenforceable")*;*

9

*Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787 (S.D.N.Y. 2008) (whether information constitutes a trade secret is "generally a question of fact"); *see also Red Fort Capital, Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 477 (S.D.N.Y. 2019) ("Although there is no general test for measuring the reasonableness of a transaction, courts commonly find-on motions to dismiss-that allegations of substantive unconscionability are insufficient.").

Defendants argue in part that the Agreement is unenforceable because Guereschi was terminated without cause. That assertion is contrary to Liberty Mutual's allegation that Guereschi was, in fact, fired for cause. As noted above, when presented with a motion under Rule 12(b)(6), the Court must accept that factual allegations in the Complaint as true. *Allaire Corp.*, 433 F.3d at 249–50.

Defendants invite the Court to take judicial notice of a decision by the State of New York Unemployment Insurance Appeal Board regarding the circumstances of Guereschi's termination. The Court may "take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006). The Appeal Board decision reportedly found no basis to assess whether Guereschi was terminated for poor job performance

10

rather than misconduct.  It is not clear from the limited record currently before the Court whether "cause" might include either of those classifications.  Accordingly, even if the Court were to take judicial notice of that decision, the question of "cause" remains unresolved.

In sum, dismissal of the breach of contract claim at this early stage in the case, without further development of the facts, would be premature.  Defendants' motion to dismiss Count I is therefore **denied.**

**III. Tortious Interference with Contractual/Business Relations**

Defendants next move to dismiss Liberty Mutual's tortious interference causes of action.  Liberty Mutual claims that defendants interfered with its contractual relations with existing policyholders, and its business relations with prospective policyholders.  To state a claim for tortious interference with contractual relations, a plaintiff must allege (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages.  *See Jews for Jesus, Inc. v. Jewish Community Relations Council, Inc.*, 968 F.2d 286, 295 (2d Cir. 1992).  A plaintiff suing for tortious interference with business relations must similarly prove that: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant,

11

knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017) (quoting *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997)).

Here, both claims are plausible given the allegations in the Complaint. With respect to existing policyholders, the Complaint alleges that defendants induced them to acquire new, competing policies in violation of the terms of the Agreement. The Complaint also alleges that defendants tried to conceal their activities by using Lebel's name, rather than Guereschi's, on the cancellation documents. The Complaint further claims that defendants recruited potential Liberty Mutual policyholders through improper means in violation of the Agreement, thereby causing Liberty Mutual to suffer damages.

Defendants argue that there can be no interference with contractual relationships because the Agreement is unenforceable. For reasons discussed above, enforceability of the Agreement cannot be determined at this early stage in the case. Because the Complaint asserts plausible claims of interference with both contractual and business relationships, defendants' motion to dismiss Count II is **denied.**

## IV. Tortious Interference with Liberty Mutual's Contractual Relationship with Guereschi

Count III of the Complaint is brought against Lebel and LFA Group for interfering with Liberty Mutual's contract with Guereschi. Briefly stated, the Complaint alleges that Lebel and LFA Group knew about the Agreement and aided and abetted Guereschi in violating its terms. For factual support, the Complaint again cites efforts by Lebel and LFA Group to conceal the alleged misconduct, including using Lebel's name instead of Guereschi's on the cancellation forms. Like Count II, the allegations in Count III set forth a plausible claim of tortious interference, and the motion to dismiss Count III is **denied.**

## V. Unjust Enrichment

Defendants also move to dismiss Liberty Mutual's unjust enrichment claim, set forth in Count IV of the Complaint. To state a claim for unjust enrichment under New York law, a plaintiff must allege that: (1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff. *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

Defendants submit that Liberty Mutual's unjust enrichment claim fails because there is no allegation that it performed services for Guereschi, Lebel, or LFA Group. The Complaint claims that Liberty Mutual provided Guereschi with a wide range

of services, including training, marketing, and specialized knowledge.  Defendants were allegedly enriched by these services and earned inequitable gains.

Defendants also argue that the connection between Liberty Mutual and defendants is "too attenuated" to support an unjust enrichment claim.  The allegations against defendants are that all three, including Lebel and LFA Group, actively tried to conceal Guereschi's involvement in persuading policyholders to cancel their Liberty Mutual policies and sign on with Allstate. If proven, those actions would render it inequitable for defendants to be enriched at Liberty Mutual's expense.  The motion to dismiss Count IV is **denied.**

**VI. Civil Conspiracy**

Finally, defendants argue that the Complaint fails to state a plausible claim of civil conspiracy.  To establish a civil conspiracy claim, Liberty Mutual must demonstrate an underlying tort plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a common purpose or plan; and (4) resulting damage or injury.  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 386 (S.D.N.Y. 2010).

Liberty Mutual's civil conspiracy claim again hinges on the claim that Lebel and LFA Group worked with Guereschi to conceal

14

his involvement in recruiting prohibited Liberty Mutual policyholders.  In other words, the Complaint alleges an agreement among the parties, overt acts in furtherance of that agreement, intentional participation, and damages in the form of lost policyholders.  The underlying torts are set forth in Liberty Mutual's tortious interference claims.  Because these allegations set forth a plausible claim of civil conspiracy, the motion to dismiss Count V is **denied.**

## Conclusion

For the reasons set forth above, defendants' motion to dismiss (ECF No. 16) is **denied.**

DATED at Burlington, Vermont, this 16th day of March, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge