```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                    WESTERN DISTRICT OF NEW YORK

LIBERTY MUTUAL INSURANCE      )
COMPANY and LIBERTY MUTUAL    )
INSURANCE GROUP, INC.,        )
                              )
     Plaintiffs,              )
                              )
         v.                   )    Case No. 17-cv-1152
                              )
MICHAEL GUERESCHI, SHANON     )
LEBEL, and LFA GROUP, LLC,    )
                              )
     Defendants.              )
```

## OPINION AND ORDER

Plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Group Inc. (collectively "Liberty Mutual") bring this action for damages and injunctive relief against Liberty Mutual's former sales representative Michael Guereschi, his business associate Shanon Lebel, and LFA Group, LLC. The Complaint alleges an unlawful conspiracy to steal Liberty Mutual clients/policyholders, and breaches of certain employment contracts. Those contracts include non-solicitation and confidentiality agreements.

Pending before the Court is a dispute about the third set of interrogatories propounded by Plaintiffs. The interrogatories ask Defendant Guereschi to describe his relationships, and disclose specific communications, with hundreds of individuals and their family members. Guereschi

allegedly sold or attempted to sell insurance to those individuals after he was terminated by Liberty Mutual. Guereschi objects to both the number and nature of Plaintiffs' latest requests.

Guereschi has moved for a protective order shielding him from a duty to respond (ECF No. 52), and Liberty Mutual has filed a cross-motion to compel responses to the interrogatories (ECF No. 57).  For the reasons set forth below, both motions are granted in part and denied in part.

## Factual Background

As alleged in the Complaint, Guereschi began working as a sales representative for Liberty Mutual in 2003.  Liberty Mutual claims that he derived substantial benefit from its marketing and advertising resources, as well as policyholder referrals. Liberty Mutual also alleges that Guereschi generated information from its existing or prospective policyholders, which information the company considers highly confidential and valuable.

The Complaint claims that Guereschi agreed to ensure the confidentiality of such information in the event of his termination.  Specifically, Liberty Mutual required employees to execute confidentiality agreements, return-of-information clauses, and restrictive covenants designed to protect against improper disclosures.  Guereschi also allegedly agreed to

2

certain limited non-competition provisions, including agreements to refrain from selling, attempting to sell, or soliciting the purchase of products or services of the kind offered by Liberty Mutual, and agreed not to communicate with any policyholder or prospective policyholder about reducing or cancelling their Liberty Mutual insurance policy.

In November 2016, Liberty Mutual terminated Guereschi's employment. After his termination, Guereschi was hired by Defendant LFA Group, LLC ("LFA") to serve as an agent for Allstate, a Liberty Mutual competitor. Liberty Mutual claims that after Guereschi joined Allstate, several Liberty Mutual policyholders cancelled their insurance and bought replacement policies from Guereschi's office. Liberty Mutual asserts, upon information and belief, that Guereschi induced or assisted with those cancellations. Guereschi reports that he worked for LFA from March 15, 2017 to April 26, 2019, and has not worked in the insurance industry since that date.

Liberty Mutual's initial interrogatories asked Guereschi to disclose all Liberty Mutual customers whom he solicited and/or to whom he sold policies after his termination. Guereschi allegedly responded with a list of 77 names. Liberty Mutual reports that records subpoenaed from Allstate and Guereschi's phone carrier revealed additional Liberty Mutual customers with whom Defendants had communications. Guereschi contends that

3

some of the clients in question were cultivated as a result of his "independent efforts," and not as a result of his relationship with Liberty Mutual.

In light of Guereschi's "independent efforts" defense, Liberty Mutual served a third set of interrogatories. The document contains six interrogatories, each of which reference an attached list of 459 people. The interrogatories essentially ask Guereschi to describe:

1) his pre-existing business relationship with any of the 459 people at issue;

2) his pre-existing personal relationship with any of those people;

3) his initial efforts to sell insurance to those people;

4) the "independent efforts" he claims to have employed for each person he contends was "developed" through such efforts;

5) the "independent recruitment effort" he claims he employed for each person who allegedly "came to Liberty Mutual" as a result of such efforts; and

6) facts supporting his claim that any such person was not "developed" as a customer at Liberty Mutual "solely through the goodwill of Liberty."

ECF No. 57-6.

On November 23, 2022, Guereschi's attorney sent a letter to opposing counsel objecting to the interrogatories, arguing that when combined with Plaintiffs' first and second sets of interrogatories, the requests exceed the number of interrogatories allowed under the Federal Rules of Civil

4

Procedure.  Counsel also objected to the interrogatories as unreasonable and unduly burdensome.  Those letters were followed by the pending motion for a protective order, and by Plaintiffs' opposition and motion to compel.

Guereschi's reply brief reports that Liberty Mutual has since reduced the number of names from 459 to 344.  ECF No. 61 at 2.  Guereschi submits that the relevant number of clients is approximately 119, which number represents the 77 customers he identified initially, plus an additional 42 customers revealed as a result of Allstate's subpoena response.  Guereschi asks the Court to limit the inquiry to those 119 names, arguing that Liberty Mutual is only entitled to ask about people to whom he sold policies.  Liberty Mutual contends that the list should not be limited to sales, and that the additional names are persons whom Defendants solicited in breach of Guereschi's various employment contracts.

## Discussion

**I.  Motion for Protective Order**

Under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ....  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  "Rule 26(c) confers

5

broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Jerolimo v. Physicians for Women, P.C.*, 238 F.R.D. 354, 356 (D. Conn. 2006) (citations and quotation marks omitted).

### A. The Number of Interrogatories

Rule 33(a)(1) provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 33(a)(1). Liberty Mutual's initial discovery request contained 13 interrogatories directed to Guereschi. Its second set propounded an additional five interrogatories. Without counting subparts, the most recent set of six interrogatories, when combined with the previous 18 requests, falls within the limit of 25 set by Rule 33(a)(1).

Guereschi argues that the most recent requests functionally comprise hundreds of separate interrogatories, as he must recall each relationship and provide the requested information for each person. The advisory committee notes to Rule 33 explain that "a question asking about communications of a particular type should

be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication." Fed. R. Civ. P. 33 advisory committee notes (1990 Amendment).  Accordingly, an interrogatory asking for detail about a certain type of communication is a single question.  *See, e.g., Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 47 (D. Conn. 2004) (compelling yacht club to respond to interrogatories referencing a table with numerous columns, and declining to consider each item in the table as a separate interrogatory).

 Liberty Mutual's six interrogatories ask about pre-existing business and personal relationships, efforts to sell insurance, and the nature of those efforts to the extent they were "independent" and/or free from the "goodwill of Liberty" Mutual. Each interrogatory ties into the list of names, but the questions themselves consist of single interrogatories.  *See id.* Moreover, the latter questions ask Guereschi to characterize the nature of certain communications ("independent efforts" or "independent recruitment efforts"), many of which will presumably be listed and characterized in prior responses. While the Court acknowledges that the responses may be voluminous and time-consuming, as addressed below, the questions

7

do not constitute hundreds of individual interrogatories and do not run afoul of the numeric limit set forth in Rule 33.

### B. Unreasonable or unduly burdensome

Guereschi also objects to the interrogatories as unreasonable and/or unduly burdensome. Rule 26 provides that

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The Court again acknowledges that the third set of interrogatories require a significant amount of information. That information is relevant, in large part, because of Guereschi's defense that he cultivated customer relationships through independent efforts, and not because of his access to Liberty Mutual's resources. Given that Guereschi will likely present such evidence at summary judgment or at trial, the facts underlying the defense are discoverable.

Guereschi submits that the number of persons at issue should represent former Liberty Mutual customers to whom

Defendants actually sold a policy after Guereschi's departure, as those sales are the only source of Plaintiffs' alleged damages. Liberty Mutual contends that the number is higher, since even a mere solicitation may have caused a policyholder to cancel or decline to renew. While Liberty Mutual will ultimately have to prove such damages, the Court will not limit its inquiry to only those persons to whom Defendants ultimately sold a policy.

To the extent Guereschi claims that the agreements he signed are not enforceable, the Court previously determined his arguments are premature. ECF No. 26 (denying Defendants' motion to dismiss).

Guereschi claims that the requests will result in significant expenditures of time and excessive legal fees. Guereschi also argues that the requests are overly broad. This last objection is well taken as, in the case of Guereschi's father for example, there are persons for whom Guereschi cannot be expected to list all communications during the requested time period. That objection may extend to other individuals, such as other family members or longtime friends, as well. The Court will require only a reasonable response, and in some instances a simple description of the relationship will be sufficient.

On the issue of time and fee expenditures, Guereschi's "independent efforts" defense will be necessarily individualized

9

and detailed.  Because his defense may play a significant role in the outcome of this case, such expenditures are necessary and justified.  Indeed, courts in this Circuit have held that time and expense alone are insufficient to avoid the duty to respond to interrogatories.  *See, e.g., Burns v. Imagine Films Ent., Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) ("the fact that answering the interrogatories will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing 'huge volumes of documents and information' is an insufficient basis to object").

The Court therefore finds that Guereschi has shown good cause for a protective order only to the extent that some of Plaintiffs' requests, which may encompass close friends and relatives, are overly broad and require only reasonable responses.  With that consideration in mind, Guereschi must provide responses with respect to the names set forth by Liberty Mutual in its third set of interrogatories.

**II.  Motion to Compel**

Plaintiffs' motion to compel asks the Court to require Guereschi to respond to the third set of interrogatories.  For the reasons set forth above, that motion is granted in part and denied in part, and Guereschi must provide reasonable responses for each of the names set forth by Liberty Mutual in its six interrogatories.

**III. Fees and Costs**

Plaintiffs ask the Court to award them fees and costs with respect to the pending motions.  Where, as in this case, a discovery motion is granted in part and denied in part, Federal Rule of Civil Procedure 37(a)(5)(C) applies and the Court has discretion to apportion fees.  Given that the Court is providing some measure of relief to both parties, it finds that each party must bear its respective fees and costs.  *See Fleming v. City of New York*, No. 18CV4866GBDJW, 2023 WL 1861223, at *5 (S.D.N.Y. Feb. 9, 2023) (citing cases).

## Conclusion

For the reasons set forth above, Defendant Guereschi's motion for protective order (ECF No. 52) is granted in part and denied in part, and Plaintiffs' cross-motion to compel (ECF No. 57) is granted in part and denied in part.  The parties shall bear their own fees and costs with respect to each motion.

DATED at Burlington, Vermont, this 28th day of February, 2023.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge